Joseph M. Alioto (SBN 42680)
Theresa D. Moore (SBN 99978)
Joseph M. Alioto, Jr. (SBN 215544)
Angelina Alioto-Grace (SBN 206899)
Thomas P. Pier (SBN 235740)
ALIOTO LAW FIRM
555 California Street, Suite 3160
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
Email: jmalioto@aliotolaw.com

Attorney for Plaintiffs
[ADDITIONAL COUNSEL APPEAR ON LAST PAGE]

**MEJ**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**3854**

GOLDEN GATE PHARMACY SERVICES, ) 
INC., d/b/a GOLDEN GATE PHARMACY, )
JAMES CLAYWORTH, R.Ph., MARIN )
APOTHECARIES, d/b/a ROSS VALLEY )
PHARMACY, PEDIATRIC CARE PHARMACY, )
INC., TONY MAVRANTONIS, R.Ph., JOHN )
O'CONNELL, R. Ph., and TILLEY )
APOTHECARIES, INC., d/b/a ZWEBER'S )
APOTHECARY, )

                Plaintiffs, )

v. )

PFIZER, INC., and WYETH, )

                Defendants. )

Case No.

**COMPLAINT FOR INJUNCTIVE RELIEF FOR VIOLATION OF THE CLAYTON ANTITRUST ACT, §7, AND SHERMAN ACT, §1**

Plaintiffs, retail pharmacies in California who purchase drugs directly or indirectly from the defendants, bring this action under Sections 7 and 16 of the Clayton Antitrust Act, 15 U.S.C. Sections 18 and 26, and Section 1 of the Sherman Act, 15 U.S.C. §1, to enjoin the merger of the defendants, and for their Complaint allege as follows:

**INTRODUCTION**

1. On January 26, 2009, the defendants announced that they had agreed to combine in a cash-and-stock deal for $68 billion dollars, in the largest big pharma and largest biopharma merger in world history.

1

*Complaint for Injunctive Relief for Violation of the Clayton Antitrust Act*

2.     Approximately $22.5 Billion of the $68 Billion will be loans from certain banks.

3.     Four of the five financial institutions providing the $22.5 Billion loan to facilitate the merger are recipients of approximately $120 Billion from the United States Treasury Department's TARP funds.

4.     Bank of America and Citigroup have received a combined $85 Billion in TARP funds.

5.     Goldman Sachs and JP Morgan Chase received a combined $35 Billion.

6.     These TARP funds are being used in whole or in part to fund a combination by defendants that the banks know will result in the loss of 22,000 jobs, the elimination of competition, the probable increase in prices for prescription drugs, the smothering of innovation, and other intended anticompetitive effects.

7.     The effect of the announced merger of defendants may be to lessen competition or to tend to create a monopoly in the manufacture, and sale of prescription pharmaceutical drugs ("drugs") in the United States and California, in violation of Section 7 of the Clayton Act, 15 U.S.C. §18, and will constitute a combination that unreasonably restrains trade in this market in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

8.     Plaintiffs are pharmacies who have purchased drugs from one or both of the defendants directly or indirectly in the past, and expect to continue to do so in the future.  They are threatened with loss or damage by defendants' merger in the form of higher drug prices, diminished choices of drugs, and lesser quality of drugs, less innovation and research, and, accordingly, they bring this action for preliminary and permanent injunctive relief against the merger pursuant to Section 16 of the Clayton Act, 15 U.S.C. §26.

**JURISDICTION**

9.     This action is brought under Section 16 of the Clayton Act, 15 U.S.C. §26, to secure equitable relief against the defendants due to their violation of Section 7 of the Clayton Antitrust Act, 15 U.S.C. Section 18, and Section 1 of the Sherman Act, 15 U.S.C. §1.  This Court has subject matter jurisdiction of the federal antitrust claims asserted in this action under Section

1   16 of the Clayton Antitrust Act, 15 U.S.C. §26, and Title 28 United States Code §§1331 and

2   1337.

### THE PARTIES

4       10.     Each of the plaintiffs named in this Complaint has purchased drugs, directly or

5   indirectly, from one or both of the defendants and each plaintiff expects to continue to purchase

6   drugs from one or both of the defendants or their merged entity in the future.

7       11.     Plaintiff Golden Gate Pharmacy Services, Inc., d/b/a Golden Gate Pharmacy is a

8   California corporation managed by Rebecca Lofholm, R.Ph., with its principal place of business

9   at 1525 E. Francisco Boulevard, #2, San Rafael, California  94901.

10      12.     Plaintiff James Clayworth, R.Ph., is a California resident who has purchased

11  drugs, directly or indirectly, from one or both of the defendants and expects to continue to

12  purchase drugs from one or both of the defendants or their merged entity in the future.

13      13.     Plaintiff Marin Apothecaries, Inc., d/b/a/ Ross Valley Pharmacy, is a California

14  corporation managed by Paul Lofholm, R.Ph., with its principal place of business at 2 Bon Air

15  Road, Larkspur, California  94939.

16      14.     Plaintiff Pediatric Care Pharmacy, Inc. is a California corporation, managed by

17  Tom Liautaud, R.Ph., with its principal place of business at 4616 Delongpre Avenue, Los

18  Angeles, California  90027.

19      15.     Plaintiff Tony Mavrantonis, R. Ph., is a California resident who has purchased

20  drugs, directly or indirectly, from one or both of the defendants and expects to continue to

21  purchase drugs from one or both of the defendants or their merged entity in the future.

22      16.     Plaintiff John O'Connell, R. Ph., is a California resident who has purchased

23  drugs, directly or indirectly, from one or both of the defendants and expects to continue to

24  purchase drugs from one or both of the defendants or their merged entity in the future.

25      17.     Plaintiff Tilley Apothecaries, Inc., d/b/a Zweber's Apothecary is a California

26  corporation managed by John Tilley, R.Ph, with its principal place of business at 11411

27  Brookshire Avenue, Downey, California  90241.

28

*Complaint for Injunctive Relief for Violation of the Clayton Antitrust Act*

18.   Defendant Pfizer, Inc. ("Pfizer") is a Delaware corporation with its principal place of business at 235 East 42nd Street, New York, New York 10017.

19.   Pfizer is the world's largest drug maker.

20.   Pfizer is first among pharmaceutical manufacturers in the 2009 Fortune 500 list of companies, 46th among all companies, with 2008 revenues of $48.3 Billion and profits of $8.1 Billion.

21.   In terms of 2007 revenue, Pfizer is two times larger than its next closest competitors, Abbott Laboratories and Merck.

22.   In terms of profit, Pfizer profited in 2007 more than two times the profits of its next closest competitors, the defendant Wyeth and Abbott Laboratories.

23.   The combined profits of the defendants Pfizer and Wyeth are more than the profits of the next three closest competitors combined.

24.   Pfizer has over 86,600 employees.

25.   Pfizer's stockholder equity is over $65 Billion, and Pfizer has a market value of $139 Billion.

26.   Defendant Wyeth ("Wyeth") is a Delaware corporation with its principal place of business at 5 Giralda Farms, Madison, New Jersey 07940. Wyeth is a competitor of Pfizer in the manufacture, marketing, and sale of prescription pharmaceutical drugs in the United States. Wyeth is the fourth largest drug maker in the United States. In the 2009 Fortune 500 list of companies, Wyeth is the fourth largest pharmaceutical manufacturer, 110th among all companies, with 2008 revenues of $22.8 Billion and profits of $4.4 Billion.

27.   Wyeth has stockholder equity of over $18 Billion, and Wyeth has a market value of over $55 Billion.

28.   The profits in 2007 of defendants Pfizer and Wyeth are 50% of the total profits of the six largest prescription drug manufacturers.

## NATURE OF TRADE AND COMMERCE

29.   The relevant product and geographic markets for purposes of this action are the manufacture and sale of prescription pharmaceutical drugs in the United States.

*Complaint for Injunctive Relief for Violation of the Clayton Antitrust Act*

30.     Pfizer and Wyeth are substantial rivals in the relevant markets.

31.     The behavior of each is constrained by actual and potential competition from the other throughout the entire relevant markets.

32.     The manufacture and sale of prescription pharmaceutical drugs in the United States take place in interstate commerce, make extensive use of the instrumentalities of interstate commerce, and substantially affect interstate commerce.

33.     Materials used in the manufacture, sale, innovation and development of pharmaceutical drugs are purchased in a continuous and uninterrupted flow of interstate commerce.

34.     Any restraint of trade in the manufacture and sale, as well as the innovation and development, of prescription pharmaceutical drugs in the United States, including the restraints specifically alleged in this Complaint, directly and substantially restrains and affects interstate commerce.

## CONDUCT GIVING RISE TO VIOLATIONS OF LAW

35.     On January 26, 2009, defendants Pfizer and Wyeth announced an agreement, a cash-and-stock deal for $68 Billion dollars, pursuant to which Pfizer will acquire Wyeth.

36.     Defendants' combination will be the largest big pharma and largest biopharma merger in world history.

37.     By buying Wyeth, Pfizer will mutate from a manufacturer of blockbuster pills to a one-stop shop for vaccines, biotech drugs, traditional pills, and non-prescribed products.

38.     The proposed combination will be the second largest merger in the history of the United States.

39.     Pfizer's Chief Financial Officer, Frank D'Amelio, said, "Pfizer will put up $22.5 Billion in cash and $23 Billion in stock for the purchase, with $22.5 Billion in debt covering the rest."

40.     Four of the five financial institutions providing the $22.5 Billion loan to facilitate the merger are recipients of major capital infusions under U.S. Treasury Department's TARP funds.  Bank of America and Citigroup have received a combined $85 Billion in TARP funds,

*Complaint for Injunctive Relief for Violation of the Clayton Antitrust Act*

1 and the other two banks, Goldman Sachs and JP Morgan Chase, received a combined $35 Billion

2 for a total of $120 Billion in government funds.

3     41.     The use of TARP funds in whole or in part to eliminate a major competitor in the

4 pharmaceutical industry which may and probably will result in higher prices and the loss of tens

5 of thousands of jobs is contrary to the purpose of the intended use of TARP funds.

6     42.     The TARP funds financing defendants' merger will stimulate little additional

7 activity in sectors of the economy creating and maintaining jobs by supporting additional

8 investment in plant, equipment, inventories, infrastructure, new business formation, or research

9 and development.

10     43.     If the defendants' merger is enjoined, as it should be, the $22.5 Billion in TARP

11 funds to be provided by the banks can be made available through loans to support investment in

12 new plant and equipment, research and development, infrastructure, etc., to create new jobs and

13 maintain existing ones, with a benefit to the economy as a whole.

14     44.     Pfizer's Chief Executive Officer, Jeff Kindles, said of the merger, "In one

15 single transaction, the combination with Wyeth advances every single one of (our) strategies."

16     45.     The two companies, when combined, will have at least 17 pharmaceutical

17 products with individual annual sales in excess of $1 Billion

18     46.     The pharmaceutical industry consists of many different categories of

19 therapeutic products. Within each category, there is high substitutability of demand inasmuch

20 as the products in the category are used for the same purposes.

21     47.     Generally, when the number of products in a category increases, prices

22 significantly decrease.

23     48.     The defendants have a number of products in the same pharmaceutical

24 categories.

25     49.     Pfizer's antidepressant, Zoloft, competes with Wyeth's antidepressants,

26 Effexor and Effexor XR.

27     50.     Pfizer's antibacterial, Zyvox, competes with Wyeth's antibacterial, Tygacil.

28

51.     Pfizer's anti-neoplastic, Sutent, competes with Wyeth's anti-neoplastic, Torisel.

52.     The merger will eliminate all competition between such competing products.

53.     In addition, both Pfizer and Wyeth have numerous potentially competitive products in research, development, or testing that would be rivals once they receive FDA approval. The merger will eliminate this competition as well.

54.     The defendants' merger will further adversely affect competition by chilling and diminishing innovation. The defendants' merger will eliminate and foreclose the defendants' competition with each other to develop and introduce new drugs.

55.     If defendants' merger proceeds, the potential for price-fixing, division of markets, and other anticompetitive acts with the remaining pharmaceutical manufacturers will be significant and probable.

56.     In addition to the degree of market concentration, there are significant barriers to entry in the relevant market, as well as a history of a lack of successful new entry.

57.     Defendants' proposed merger is also likely to lead to other mergers and further concentration in the already highly concentrated relevant market. Merck intends to acquire Schering-Plough, also in a transaction financed by banks receiving TARP funds. As recently as 1987, government statistics reveal that the leading 8 pharmaceutical companies accounted for 36 percent of U.S. industry shipments. By 2002, the share of the largest eight companies had risen to more than 53 percent. These figures, moreover, understate the extent of concentration among research-based companies since they include roughly 18 to 24 percent of shipments made by smaller generic manufacturers.

58.     The effect of the announced merger of defendants may be to lessen competition or to tend to create a monopoly in the relevant markets in the United States, in violation of Section 7 of the Clayton Act, 15 U.S.C. §18, as well as unreasonably to restrain trade in said market in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

59.     Plaintiffs are pharmacies who have purchased drugs directly or indirectly from one or both of the defendants in the past, and expect to continue to do so in the future. They are

7

*Complaint for Injunctive Relief for Violation of the Clayton Antitrust Act*

threatened with loss or damage by defendants' merger in the form of higher drug prices, diminished choice of drugs, and lower quality of drugs, and, accordingly, they bring this action for preliminary and permanent injunctive relief against the merger pursuant to Section 16 of the Clayton Act, 15 U.S.C. §26.

60.     The Chief Executive Officers of the defendants met privately to discuss the potential merger.

61.     When the CEO's of the defendants met, they discussed the probable effects of the merger on prices, products, and jobs.

62.     The banks, as financiers of the merger, are co-conspirators who aided and abetted the defendants in pursuit of the defendants' unlawful activity.

63.     Before committing TARP funds, the banks knew and expected that the proposed merger would result in the loss of tens of thousands of jobs, the probable increase in price of products manufactured and sold by defendants, and the diminishment of innovation and research.

64.     Based upon revenues of the top eight prescription pharmaceutical companies, Pfizer has a market of approximately $190 Billion in sales in 2007, Pfizer has 26% of the market and Wyeth has 12% of the market.

65.     If the proposed merger is allowed to go forward, the new combine will control approximately 40% of the manufacture and sale of prescription drugs in the United States, with the next highest competitor having approximately 13%.

## VIOLATIONS ALLEGED

## CLAYTON ACT, SECTION 7

66.     The conduct of defendants described hereinabove, specifically their agreement to merge, constitutes a violation of Section 7 of the Clayton Act, 15 U.S.C. §18, in that the effect of the proposed merger of defendants may be substantially to lessen competition, or to tend to create a monopoly in the relevant markets in the United States, by reason of which violation the plaintiffs are threatened with loss or damage in the form of higher prices, diminished choice, and lower quality of drugs, irreparable harm for which damages will be inadequate to compensate plaintiffs, such that plaintiffs are entitled to bring suit under Section

16 of the Clayton Antitrust Act, 15 U.S.C. §26, to obtain preliminary and permanent injunctive relief to prohibit the defendants' merger, and to recover plaintiffs' costs of suit, including a reasonable attorney's fee.

## SHERMAN ACT, SECTION 1

67.    The conduct of defendants and the banks financing the defendants' merger described hereinabove constitutes a combination and conspiracy that unreasonably restrains trade in the relevant markets in the United States, by reason of which violation the plaintiffs are threatened with loss or damage in the form of higher prices, diminished choice, and lower quality of drugs, irreparable harm for which damages will be inadequate to compensate plaintiffs, such that plaintiffs are entitled to bring suit under Section 16 of the Clayton Antitrust Act, 15 U.S.C. §26, to obtain preliminary and permanent injunctive relief to prohibit the defendants' combination, and to recover plaintiffs' costs of suit, including a reasonable attorney's fee.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand from this Honorable Court a judgment:

A.    Declaring, finding, adjudging, and decreeing that the agreement of the defendants to merge violates Section 7 of the Clayton Antitrust Act, §18, and Section 1 of the Sherman Act, 15 U.S.C. §1.

B.    Preliminarily enjoining the defendants from consummating their merger during the pendency of this action.

C.    Permanently enjoining the defendants from consummating their merger;

D.    Awarding to plaintiffs their costs of suit, including a reasonable attorney's fee, as provided by Section 16 of the Clayton Antitrust Act, 15 U.S. C. §26;

E.    Granting plaintiffs such other and further relief to which they may be entitled and which the Court finds to be just and appropriate.

DATED: August 21, 2009                      ALIOTO LAW FIRM

                                            By: _____
                                                Joseph M. Alioto

9

*Complaint for Injunctive Relief for Violation of the Clayton Antitrust Act*

1

**PLAINTIFFS' COUNSEL**

2

3   ALIOTO LAW FIRM
    Joseph M. Alioto (SBN 42680)
    Theresa D. Moore (SBN 99978)
4   Joseph M. Alioto, Jr. (SBN 215544)
    Angelina Alioto-Grace (SBN 206899)
5   Thomas P. Pier (SBN 235740)
    555 California Street, Suite 3160
6   San Francisco, CA 94104
    Telephone: (415) 434-8900
7   Facsimile: (415) 434-9200
    Email: jmalioto@aliotolaw.com
8   Email: tmoore@aliotolaw.com
    Email: tpier@aliotolaw.com

9

LAW OFFICE OF JAMES M. DOMBROSKI
James M. Dombroski (SBN 56898)
P.O. Box 751027
Petaluma, CA 94975
Telephone: (707) 762-7807
Facsimile: (707) 769-0419
Email: jdomski@aol.com

10  LAW OFFICES OF JOHN H. BOONE
    John H. Boone (SBN 44876)
    555 California Street, Suite 3160
11  San Francisco, CA 94104
    Telephone: (415) 434-1133
12  Facsimile: (415) 434-9200
    Email: jboone@dc.rr.com

13

LAW OFFICES OF JEFFERY K. PERKINS
Jeffery K. Perkins (SBN 57996)
1275 Columbus Avenue
San Francisco, CA 94133
Telephone: (415) 474-3833
Facsimile: (415) 474-2890
Email: jefferykperkins@aol.com

14  GRAY, PLANT, MOOTY, MOOTY &
    BENNETT
    Daniel R. Shulman (pending *pro hac*
15  *vice*)
    500 IDS Center
16  80 South 8th Street
    Minneapolis, MN 55402
17  Telephone: (612) 632-3335
    Facsimile: (612) 632-4335
18  Email: daniel.shulman@gpmlaw.com

GARY D. McCALLISTER & ASSOCIATES
Gary D. McCallister (pending *pro hac vice*)
120 North LaSalle Street, Suite 2800
Chicago, IL 60602
Telephone: (312) 346-0611
Facsimile: (312) 345-0612
Email: gdm@gdmlawfirm.com

FOREMAN & BRASSO
Russell F. Brasso (SBN 85417)
930 Montgomery Street, Suite 600
San Francisco, CA 94133
Telephone: (415) 433-3475
Facsimile: (415) 781-8030
Email:
Russell.brasso@foremanandbrasso.com

19

20

21

22

23

24

25

26

27

28

*Complaint for Injunctive Relief for Violation of the Clayton Antitrust Act*