1  MORGAN, LEWIS & BOCKIUS LLP
   Franklin Brockway Gowdy, State Bar No. 047918
2  Kent M. Roger, State Bar No. 095987
   Lisa Tenorio-Kutzkey, State Bar No. 205955
3  R. Sturtevant Eaton, State Bar No. 240761
   One Market, Spear Street Tower
4  San Francisco, CA  94105-1126
   Tel:  415.442.1000
5  Fax:  415.442.1001
   E-mail:  fgowdy@morganlewis.com
6           kroger@morganlewis.com
            ltenorio-kutzkey@morganlewis.com
7           reaton@morganlewis.com

8
   Scott A. Stempel (*appearing Pro Hac Vice*)
9  John Clayton Everett, Jr. (*appearing Pro Hac Vice*)
   Daniel A. Schiffer (*appearing Pro Hac Vice*)
10 1111 Pennsylvania Ave NW
   Washington, DC 20004
11 Tel: 202.739.3000
   Fax: 202.739.3001
12 E-mail:  sstempel@morganlewis.com
            jeverett@morganlewis.com
13          dschiffer@morganlewis.com

14 Attorneys for Defendants Pfizer Inc. & Wyeth

15

16                   UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18                     SAN FRANCISCO DIVISION

19 GOLDEN GATE PHARMACY              Case No. CV-09-3854-MMC
   SERVICES, INC., d/b/a GOLDEN GATE
20 PHARMACY, JAMES CLAYWORTH,        **DEFENDANTS' NOTICE OF MOTION AND**
   R.Ph., MARIN APOTHECARIES, d/b/a  **MOTION TO DISMISS PLAINTIFFS'**
21 ROSS VALLEY PHARMACY,             **FIRST AMENDED COMPLAINT;**
   PEDIATRIC CARE PHARMACY, INC.,    **MEMORANDUM OF POINTS AND**
22 TONY MAVRANTONIS, R.Ph., JOHN     **AUTHORITIES IN SUPPORT THEREOF**
   O'CONNELL, R.Ph., and TILLEY
23 APOTHECARIES, INC., d/b/a
   ZWEBER's APOTHECARY,              Date:        December 4, 2009
24                                   Time:        9:30 a.m.
                 Plaintiffs,         Courtroom:   Courtroom 7, 19th Floor
25                                   Judge:       The Hon. Maxine M. Chesney
            vs.
26                                   Trial Date:  Not yet set
   PFIZER INC., and WYETH,
27
                 Defendants.
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63876299.1

MOTION TO DISMISS PLAINTIFFS' FA COMPLAINT; MEMO POINTS AND AUTHORITIES IN SUPPORT
Case No. CV-09-3854-MMC

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that, on Friday, December 4, 2009, at 9:00 a.m., or as soon

4  thereafter as the matter may be heard, in Courtroom 7, 19th Floor, of the United States District

5  Courthouse, 450 Golden Gate Ave, San Francisco, CA 94102, Defendants Pfizer Inc. and Wyeth

6  will, and hereby do, move the Court to dismiss Plaintiffs' First Amended Complaint for failure to

7  state a claim upon which relief can be granted.

8      Defendants bring this Motion based upon this Notice, Rule 12(b)(6) of the Federal Rules

9  of Civil Procedure, the attached Memorandum of Points and Authorities, all records on file with

10  this Court, and such further oral and written argument as may be presented at, or prior to, the

11  hearing of this matter.

12

13

## STATEMENT OF ISSUES

14      1.      Whether Plaintiffs fail to allege a plausible violation of either Section 7 of the

15  Clayton Act, 15 U.S.C. § 18, or Section 1 of the Sherman Act, 15 U.S.C. § 1, as required by *Bell*

16  *Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63876299.1                                                      1

MOTION TO DISMISS PLAINTIFFS' FA COMPLAINT; MEMO POINTS AND AUTHORITIES IN SUPPORT
Case No. CV-09-3854-MMC

# TABLE OF CONTENTS

**Page**

**MEMORANDUM OF POINTS AND AUTHORITIES** ..................................................... **2**

**I.     INTRODUCTION** ........................................................................................... **2**

**II.    BACKGROUND** ............................................................................................. **3**

**III.   ARGUMENT** ................................................................................................. **5**

A.     Relevant Legal Standards ........................................................................ 5

B.     Plaintiffs' FA Complaint Continues to Rely on Conclusory Allegations and
Unsupported Contentions Already Rejected by the Court ...................................... 6

C.     Plaintiffs' Allegations About New "Markets" Suffer From The Same
Defects. ......................................................................................................... 8

D.     Plaintiffs Have No Standing To Assert Claims Based On Purportedly
Reduced Competition in Animal Health Markets, And Those Claims Are
Moot In Any Event .......................................................................................... 11

E.     Plaintiffs' Complaint Should Be Dismissed With Prejudice. ......................... 12

**IV.    CONCLUSION** ............................................................................................. **12**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*Apple, Inc. v. Pystar Corp.*, 586 F. Supp. 2d 1190 (N.D. Cal. 2008) ............................................. 5

*Ashcroft v. Iqbal*, ---, U.S. -- 129 S. Ct. 1937, 173 L. Ed. 2d 868 (May 18, 2009) ............... 2, 3, 5

*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990)...................................................... 2

*Bell Atlantic Corp. v. Twombly*, 505 U.S. 515 (2007) .............................................................. 1, 5

*Bhan v. NME Hospitals, Inc.*, 772 F.2d 1467 (9th cir. 1985) .......................................................... 2

*International Shoe Co. v. Federal Trade Commission*, 280 U.S. 291, 50 S. Ct. 89, 74 L. Ed. 431 (1930)................................................................................................................... 1, 6

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008)...................................................... 1, 2, 5

*Newcal Industrial, Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008)............................. 5

*State of Calif. v. American Stores Co.*, 872 F.2d 837 (9th Cir. 1989 (construing Section 7) ......... 5

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430 (6th Cir. 2008)......................................................................................................................... 3

*U.S. v. Mercy Health Services*, 107 F.3d 632 (8th Cir. 1997)......................................................... 2

*United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586 (1957) ....................................... 6

*United States v. E.I. du Pont de Nemours & Co., Inc.*, 351 U.S. 377 (1956) ............................ 4, 5

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) .................................................... 5

*Vinci v. Waste Management Inc.*, 80 F.3d 1372 (9th Cir. 1996)..................................................... 2

## FEDERAL STATUTES

15 U.S.C. § 1 .............................................................................................................. 1, 3, 4

15 U.S.C. § 18 ......................................................................................................................... 1

15 U.S.C. § 22 ....................................................................................................................... 3

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63876299.1

ii

MOTION TO DISMISS PLAINTIFFS' FA COMPLAINT; MEMO POINTS AND AUTHORITIES IN SUPPORT
Case No. CV-09-3854-MMC

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3        Plaintiffs' First Amended Complaint ("FA Complaint") is, to borrow a phrase from Yogi

4 Berra, déjà vu all over again.  Plaintiffs repeat the allegations the Court previously found lacking

5 without even attempting to address the problems identified in the Court's Order dismissing their

6 Initial Complaint.  They still have no allegations of evidentiary facts to support either their

7 proposed market definitions or their contentions that Defendants' merger will reduce competition.

8 The new allegations added to the FA Complaint are either (a) completely conclusory or (b)

9 completely irrelevant.  Plaintiffs' failure to come forward with any new evidentiary facts to

10 support their claims demonstrates that further amendment would be futile.  Plaintiffs' claims

11 should be dismissed with prejudice.

12        On October 14, 2009, the Court dismissed Plaintiffs' Initial Complaint.  The Court held

13 that Plaintiffs' "all prescription drug" market definition was deficient as a matter of law because it

14 was unsupported by any factual allegations establishing that all prescription drugs were

15 "reasonably interchangeable by consumers for the same purposes."  Docket No. 45 at 2-3. The

16 Initial Complaint was also deficient as a matter of law, the Court held, for failing to allege any

17 evidentiary facts to support Plaintiffs' conclusory contention that Defendants' merger was likely

18 to produce "significant anticompetitive effects" in the three "therapeutic categories" identified in

19 the Complaint.  *Id.* at 3-4.  The Court granted Plaintiffs "leave to amend to cure the deficiencies

20 noted above."  *Id.* at 4.

21        Plaintiffs filed their FA Complaint two days later, on October 16, 2009, but they did not

22 even attempt to "cure the deficiencies" that led to the dismissal of their Initial Complaint.  The

23 FA Complaint still claims that there is a "market" for all prescription drugs, and it still contains

24 *no allegations* that all prescription drugs are "reasonably interchangeable by consumers for the

25 same purposes."  Likewise, the FA Complaint still alleges *no facts* relating to the "therapeutic

26 categories" the Court previously addressed that would suggest plausibly that Defendants' merger

27 might produce "significant anticompetitive effects" in any of those categories.  The FA

28 Complaint still fails to identify the products from other companies that fall within those

1    "categories," which other companies produce those products, what the "market shares" are in

2    those categories, or whether Defendants' products in those categories face generic competition.

3    The law requires more, as the Court's prior dismissal order explained.

4         Plaintiffs add allegations about a host of newly identified "markets" in the FA Complaint,

5    but those allegations compound the complaint's deficiencies rather than solving them.  Plaintiffs'

6    new allegations relating to new "markets" in their FA Complaint suffer from the same

7    deficiencies as their old allegations from their Initial Complaint. There are no evidentiary facts

8    alleged for any of those new "markets" that would, if true, establish or even suggest that (a) they

9    are proper market definitions for antitrust purposes or (b) that Defendants' merger will result in

10   significant anticompetitive effects in any of those "markets."  Plaintiffs' new allegations fall far

11   short of the standard required to state a claim.

12        In fact, the closest Plaintiffs come to alleging a plausible antitrust violation is their

13   incorporation of the FTC's October 14, 2009 Complaint through Paragraph 31 of the FA

14   Complaint..  However, Defendants have already divested the animal health assets that gave rise to

15   the FTC's Complaint, resolving that complaint and ensuring that the transaction will not produce

16   anticompetitive effects in any markets for animal health products.  Any possible antitrust

17   violation in any market for animal health products has already been remedied, rendering

18   Plaintiffs' claims relating to animal health products moot and non-justiciable.

19   **II.    <u>BACKGROUND</u>**

20        Plaintiffs filed their Initial Complaint on August 21, 2009, nearly seven months after the

21   proposed merger of Defendants was announced and on the eve of Defendants' publicly

22   announced target closing date.  They alleged that Defendants' merger would violate Section 7 of

23   the Clayton Act , 15 U.S.C. § 22, and Section 1 of the Sherman Act, 15 U.S.C. § 1, and asked for

24   the merger to be enjoined.

25        Defendants moved to dismiss the Initial Complaint on September 2, 2009 on the ground

26   that the factual allegations in the Initial Complaint failed to establish a plausible violation of the

27   U.S. antitrust laws. Docket No. 20. The Court granted Defendants' motion and dismissed the

28   Initial Complaint on October 14, 2009.  Docket No. 45.  The Court held that Plaintiffs failed to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION TO DISMISS PLAINTIFFS' FA COMPLAINT; MEMO POINTS AND AUTHORITIES IN SUPPORT
Case No. CV-09-3854-MMC

1    allege facts sufficient to support their allegation that the "relevant market" in which to analyze the

2    competitive effects of the transaction is "the manufacture and sale of prescription pharmaceutical

3    drugs." *Id.* at 2-3.  The Court noted that Plaintiffs failed to allege "even as a conclusion let alone

4    the requisite facts to support a finding, that all prescription drugs are reasonably interchangeable

5    by consumers for the same purposes."  Docket No. 45 at 3, *citing and quoting United States v.*

6    *E.I. du Pont de Nemours & Co., Inc.*, 351 U.S. 377, 395 (1956).

7            The Court also addressed Plaintiffs' allegations relating to certain "therapeutic categories"

8    identified in the Initial Complaint.  Even if those "therapeutic categories" were assumed to be the

9    "product markets at issue" in the case, the Court held, Plaintiffs failed to "allege sufficient facts to

10   support a finding that the proposed merger will have significant anticompetitive effects within

11   any particular category."  *Id.* at 3.  In particular, Plaintiffs "fail[ed] to allege that there exists no

12   other reasonably interchangeable products within the 'category of therapeutic products'" in which

13   Defendants were alleged to compete.  *Id.* at 3-4.  The Court dismissed the Initial Complaint with

14   "leave to amend to cure the deficiencies identified above."  *Id.* at 4.

15           Plaintiffs filed their FA Complaint two days later, on October 16, 2009.  In the interim,

16   the United States Federal Trade Commission ("FTC") issued a Decision and Order approving

17   Defendants' merger after a long and extensive investigation of the transaction's likely effects on

18   competition. Decision and Order, *In the Matter of Pfizer Inc. and Wyeth*, FTC Docket No. C-

19   4267, Declaration of J. Clayton Everett, Jr. ("Everett Decl."), Ex. A. The FTC also announced

20   that Defendants had agreed to divest certain animal health assets, which resolved FTC concerns

21   about the merger's potential effects in certain animal health markets.  Analysis of Proposed

22   Agreement Containing Consent Orders to Aid Public Comment, *In the Matter of Pfizer Inc. and*

23   *Wyeth*, FTC Docket No. C-4267, Everett Decl. Ex. B, at 1 (Defendants' "divestitures fully

24   preserve the competition that the proposed acquisition would otherwise eliminate.").  And the

25   FTC issued a separate statement explaining that "[a]fter a thorough investigation, the Commission

26   has concluded that the transaction does not raise anticompetitive concerns in any human health

27   product markets."  Statement of the Federal Trade Commission concerning Pfizer/Wyeth, Everett

28   Decl. Ex. C at 1.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63876299.1                                          4

MOTION TO DISMISS PLAINTIFFS' FA COMPLAINT; MEMO POINTS AND AUTHORITIES IN SUPPORT
Case No. CV-09-3854-MMC

III.   **ARGUMENT**

A.   **Governing Legal Standards.**

In order to state a claim for relief, Plaintiffs must allege facts that, if true, make it plausible to believe that they will be able to establish each element of their substantive claims. *Bell Atl. Corp. v. Twombly*, 505 U.S. 515, 559 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual development." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (May 18, 2009) (internal citations omitted). The Ninth Circuit has made clear that in antitrust cases plaintiffs "must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove" the elements of the underlying antitrust claim. *Kendall v. Visa U.S.A., Inc.*, 518 F. 3d 1042, 1047 (9th Cir. 2008). Assessing a claim's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

To establish a *prima facie* violation of either statute under which Plaintiffs assert claims, Plaintiffs must allege *facts* showing that Defendants' merger may (1) substantially lessen competition (2) in a "relevant market." *State of Calif. v. American Stores Co.*, 872 F. 2d 837, 841 (9th Cir. 1989 (construing Section 7). "[A] complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is not facially sustainable." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F. 3d 1038, 1045 (9th Cir. 2008).

For the purposes of antitrust analysis, the "market is composed of products that have reasonable interchangeability for the purpose for which they are produced—price, use and qualities considered." *United States v. E.I. du Pont de Nemours & Co,* 351 U.S. 377, 406, 76 S.Ct. 994, 100 L.Ed 1264 (1956). "Whether products are part of the same or different markets under antitrust law depends on whether consumers view those products as reasonable substitutes for each other and would switch among them in response to changes in relative prices." *Apple, Inc. v. Pystar Corp.*, 586 F. Supp. 2d 1190, 1196 (N.D. Cal. 2008)(Alsup, J.); *United States v. Microsoft Corp.*, 253 F.3d 34, 52 (D.C. Cir. 2001) ("the relevant market must include all products reasonably interchangeable by consumers for the same purposes."). "Determination of a relevant

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63876299.1

5

MOTION TO DISMISS PLAINTIFFS' FA COMPLAINT; MEMO POINTS AND AUTHORITIES IN SUPPORT
Case No. CV-09-3854-MMC

1    market is the necessary predicate to a finding of a violation of the Clayton Act because the

2    threatened monopoly must be one which will substantially lessen competition within the area of

3    effective competition.  Substantiality can be determined only in terms of the market affected."

4    *United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 593 (1957).

5         In addition to their "relevant market" allegations, Plaintiffs also must allege—and

6    ultimately prove—that Defendants' merger is likely to produce "significant anticompetitive

7    effects."  It is not enough simply to allege anticompetitive effects as a conclusion:  Plaintiffs must

8    allege *facts* that make it plausible to believe that the transaction is likely to result in a reduction of

9    competition to a "substantial degree."  As the United States Supreme Court explained,

> Mere acquisition by one corporation of the stock of a competitor, even though it
> result in some lessening of competition, is not forbidden; the act deals only with
> such acquisitions as probably will result in  lessening competition to a substantial
> degree; that is to say, to such a degree as will injuriously affect the public.
> Obviously such acquisition will not produce the forbidden result if there be no pre-
> existing substantial competition to be affected; for the public interest is not
> concerned in the lessening of competition, which, to begin with, is itself without
> real substance.

*Int'l Shoe Co. v. Fed. Trade Comm'n*, 280 U.S. 291, 298, 50 S.Ct. 89, 74 L.Ed. 431 (1930).

15        The FA Complaint fails to allege facts making it plausible to believe that Plaintiffs will be

16   able to establish either element of their claims.  The conclusory allegations contained in that

17   Complaint are insufficient to carry Plaintiffs' pleading burden.  The FA Complaint is subject to

18   dismissal for the same reasons the Court dismissed Plaintiffs' Initial Complaint.

### B.   Plaintiffs' FA Complaint Continues to Rely on Conclusory Allegations and Unsupported Contentions Already Rejected by the Court.

21        The central theory of Plaintiffs' FA Complaint remains unchanged from their Initial

22   Complaint.  Plaintiffs still claim that combining the businesses of Pfizer and Wyeth will diminish

23   competition in the purported "market" for "all prescription drugs" and have added conclusory

24   allegations that the transaction will diminish competition in the analytically similar "all brand

25   name prescription drugs market."  In dismissing the Initial Complaint, the Court held that

26   Plaintiffs failed to support their "all prescription drug" market definition with any factual

27   allegations that would, if true, plausibly establish that there is, in fact, a relevant market for

28   antitrust purposes encompassing "all prescription drugs."  Docket No. 45 at 3.  As the Court

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63876299.1                                      6

MOTION TO DISMISS PLAINTIFFS' FA COMPLAINT; MEMO POINTS AND AUTHORITIES IN SUPPORT
Case No. CV-09-3854-MMC

1   explained, "Plaintiffs fail to allege, however, even as a conclusion, let alone the requisite facts to

2   support a finding, that all prescription drugs are reasonably interchangeable by consumers for the

3   same purposes." *Id.* (internal citations omitted).

4          Rather than solving that deficiency in their FA Complaint, Plaintiffs repeat it.  The FA

5   Complaint still fails to allege—even as a conclusion, let alone the requisite facts to support a

6   finding—that "all prescription drugs" or "all brand name prescription drugs" are reasonably

7   interchangeable by consumers for the same purposes.  Plaintiffs presumably have not added such

8   allegations because they cannot do so.  Basic common sense confirms that all prescription drugs

9   are *not* reasonably interchangeable with one another.

10          The only new allegations added by Plaintiffs to support their "all prescription drug"

11  market definition are that certain media outlets sometimes use the word "market" when

12  describing overall sales of prescription drugs or overall sales of brand name prescription drugs.

13  FA Complaint ¶18. The media's colloquial use of the term "market," however, does not establish

14  or even suggest that "all prescription drugs" or "all brand name prescription drugs" are

15  appropriate relevant markets for antitrust purposes.  Plaintiffs' claims relating to the purported

16  market for "all prescription drug" remain deficient for the reasons the Court explained in its

17  October 14 Order.

18          Plaintiffs likewise fail to cure the deficiencies the Court identified in relation to the three

19  "therapeutic categories" Plaintiffs identified in their Initial Complaint, which are repeated in their

20  FA Complaint.  In dismissing the Initial Complaint, the Court held that "even if the complaint

21  could be reasonably understood as providing sufficient notice that categories of therapeutic

22  products are the product market(s) at issue herein, the complaint fails to allege sufficient facts to

23  support a finding that the proposed merger will have significant anticompetitive effects within

24  any particular category."  Docket No. 45 at 3.  In particular, the Court noted that Plaintiffs failed

25  to allege that there were no other competitors in the relevant "therapeutic categories," requiring

26  dismissal of their claims based on effects in those categories.  *See id.* at 3-4.

27          Plaintiffs do not even attempt to remedy those defects in their FA Complaint.  Plaintiffs

28  add new allegations of Defendants' "dominance" in the categories at issue, but those are just

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63876299.1                                            7

MOTION TO DISMISS PLAINTIFFS' FA COMPLAINT; MEMO POINTS AND AUTHORITIES IN SUPPORT
Case No. CV-09-3854-MMC

1   conclusions unsupported by any allegations of evidentiary facts. *See* FA Complaint ¶¶ 24-26.

2   That is far from sufficient to carry Plaintiffs' burden. *See generally Iqbal*, 129 S.Ct. at 1949 ("Nor

3   does a Complaint suffice if it tenders naked assertions devoid of further factual development.") ;

4   *Kendall*, 518 F. 3d at 1047 (requiring that "evidentiary facts" be pled in order to satisfy each

5   element of a plaintiff's claim).  There are still no allegations about (a) other products available in

6   the "therapeutic categories" Plaintiffs identify, (b) the nature of competition for those products,

7   (c) market shares for the different products contained within those categories or (d) any structural

8   characteristics of those "markets" that would allow the Court to conclude that it is plausible to

9   believe the transaction might result in anticompetitive effects.  There is still no allegation that

10  "there exists no other reasonably interchangeable products within the category or products"

11  Docket No. 45 at 3-4.  There is still, in short, no plausible antitrust violation alleged with regard

12  either to the purported "market" for all prescription drugs or the three "categories" identified by

13  Plaintiffs.

14      **C.**    **Plaintiffs' Allegations About New "Markets" Suffer From The Same Defects.**

15      The same fatal problems infect Plaintiffs' new allegations about effects in other

16  "markets."  Paragraph 17 of the FA Complaint alleges a host of new "markets" that Plaintiffs

17  claim are relevant to assessing the transaction.   Plaintiffs fail, however, to allege any facts to

18  establish (1) that the products contained within these newly identified "markets" are reasonably

19  interchangeable with one another or (2) that the transaction will produce "significant

20  anticompetitive effects" in any of those newly alleged "markets."  *Compare* Docket No. 45 at 3-4

21  (discussing insufficient allegations of diminished competition with regard to allegations from

22  Initial Complaint regarding various "therapeutic categories.").  With regard to each one of these

23  new markets, the FA Complaint simply repeats word-for-word the consistent, conclusory and

24  completely unsupported mantra that (a) competition will be "eliminated" between Defendants in

25  each of the new "markets" they identify, (b) that Defendants have a "dominant position," (c) that

26  a price umbrella will be created, and (d) that entry will be deterred.  *See* FA Complaint ¶¶ 27, 28,

27  29, 30.

28      As the Supreme Court explained in *Iqbal*, "[t]he Federal Rules do not require courts to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION TO DISMISS PLAINTIFFS' FA COMPLAINT; MEMO POINTS AND AUTHORITIES IN SUPPORT
Case No. CV-09-3854-MMC

1    credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 129

2    S.Ct. at 1954.  It is impossible to determine whether Plaintiffs' conclusory allegations regarding

3    the "elimination" of competition are relevant for antitrust purposes without supporting allegations

4    of sufficient evidentiary facts to make the potential for anticompetitive effects plausible.  *See*

5    *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F. 3d 430,

6    437(6th Cir. 2008) (affirming dismissal of antitrust complaint for failing to allege the other

7    companies with which the parties competed or the scope of competition).

8         Plaintiffs here provide no virtually relevant factual context.  For many of the "markets"

9    Plaintiffs seek to put at issue in their FA Complaint, Plaintiffs fail even to identify what products

10   Plaintiffs believe that Defendants produce or sell in such "markets."  *See, e.g.,* FA Complaint Par.

11   27 (describing purported effects in the "market" for the "treatment of renal cell carcinoma" but

12   failing to identify the Pfizer and Wyeth products that purportedly fall within that market

13   definition); Par. 28 (same for alleged market for "drugs for the treatment of MRSA"); Par. 29

14   (same for alleged market for "innovation for the development of prescription drugs for the

15   treatment of osteoporosis"); Par. 29 (same for alleged "innovation market" relating to the

16   "treatment of Alzheimer's").

17        Plaintiffs also do not tell the Court how many other pharmaceutical manufacturers

18   compete with Defendants in each identified "market," how many products are in the "relevant

19   market," whether pharmaceutical prices are transparent, or how substantial the differences in

20   prices among pharmaceutical products are.  They do not allege any structural characteristics of

21   the purported relevant markets that would make them amenable to coordinated interaction

22   regarding prices or output or any facts suggesting that the transaction will give Pfizer unilateral

23   pricing power in any market.  *See  FTC & U.S. Dep't of Justice Horizontal Merger Guidelines* at

24   §§2.0-2.22  (Everett Decl. Ex. D) (describing factors relevant to assessing the likelihood that

25   proposed mergers or acquisitions will facilitate coordinated interaction or unilateral pricing

26   power).  Plaintiffs' conclusory allegations, in short, leave the Court with no ability to assess the

27   plausibility of their claim that competition will be reduced.

28        Plaintiffs do allege Defendants' purported "market share" of spending on research and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63876299.1                                        9
MOTION TO DISMISS PLAINTIFFS' FA COMPLAINT; MEMO POINTS AND AUTHORITIES IN SUPPORT
Case No. CV-09-3854-MMC

1    development (FA Complaint ¶ 23), but those allegations likewise give insufficient context to

2    create a plausible inference that Plaintiffs will be able to establish a violation of the antitrust laws

3    in relation to the purported "innovation market" for general spending on pharmaceutical research

4    and development.  The "market shares" Plaintiffs allege in Paragraph 23 are just shares of

5    spending—*i.e.*, the share of dollars devoted to R&D.  Those alleged share percentages do not

6    describe Defendants' share of any "specialized assets" that would allow Defendants to limit or

7    control the ability of other companies to invest whatever dollars they have into innovation.  *See*

8    *generally* FTC and DOJ Antitrust Guidelines for the Licensing of Intellectual Property §3.2.3

9    ("The Agencies will delineate an innovation market only when the capabilities to engage in the

10   relevant research and development can be associated with specialized assets or characteristics of

11   specific firms.") (Everett Decl. Ex. E).  "Shares" of spending tell the Court nothing about

12   potential competitive effects in relation to innovation markets.  Dollars are fungible, and

13   Defendants—even after the merger—certainly do not have "market power" over dollars.  Nothing

14   about Defendants' merger can or could possibly prevent other pharmaceutical companies from

15   raising money for their own research and development efforts.

16          Even if the "shares" Plaintiffs allege of R&D spending did describe shares of relevant

17   "specialized assets," however, their allegations would still fall short of the plausibility threshold

18   established in *Twombly*.  Because of the unique characteristics of "innovation markets"—as

19   distinguished from typical product markets—innovation competition is unlikely to be controlled,

20   harmed or diminished, regardless of market shares, if "four or more independently controlled

21   entities in addition to the [Defendants] possess the required specialized assets or characteristics

22   and the incentive to engage in research and development that is a close substitute of the research

23   and development activities of the [Defendants]."  *Id.* at §4.3.  Plaintiffs do not allege how many

24   other pharmaceutical companies are engaged in research and development activities in relation to

25   any pharmaceutical products, but it is surely more than four.  The Complaint fails to allege

26   evidentiary facts establishing a plausible violation of the antitrust laws in relation to any of their

27   newly alleged "markets"—product or innovation.

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

DB1/63876299.1                                         10
MOTION TO DISMISS PLAINTIFFS' FA COMPLAINT; MEMO POINTS AND AUTHORITIES IN SUPPORT
Case No. CV-09-3854-MMC

1

**D.     Plaintiffs Have No Standing To Assert Claims Based On Purportedly Reduced Competition in Animal Health Markets, And Those Claims Are Moot In Any Event.**

2

3          In fact, the only specific allegations of "evidentiary facts" that could make out a plausible

4    antitrust violation are found not in the body of the FA Complaint itself, but in the FTC's

5    Complaint referenced in paragraph 31 of the FA Complaint.   Pfizer, however, has already

6    divested assets in the animal health markets identified in the FTC's Complaint.  Those

7    "divestitures fully preserve the competition that the proposed acquisition would otherwise

8    eliminate."  *See* Competitive Impact Statement and Analysis to Aid Public Comment (Everett

9    Decl. Ex. B) (describing divestitures).  The transaction as currently structured cannot and will not

10   reduce competition in such markets because the acquisition did not result in the relevant

11   competing products coming under Pfizer's control.  As required by the Consent Order issued by

12   the FTC, Pfizer has divested all competing products that could give rise to antitrust concerns if

13   owned by Pfizer. *Id.*  Even if Plaintiffs had alleged sufficient facts in their own Complaint—

14   rather than just referencing the FTC Complaint—relating to these animal health markets,

15   therefore, their claims would nonetheless be moot and properly dismissed.  *See U.S. v. Mercy*

16   *Health Servs.*, 107 F.3d 632, 636 (8th Cir. 1997) (antitrust challenge to merger dismissed as moot

17   after parties abandoned transaction).

18          In addition, Plaintiffs—all of which are alleged to be pharmacists—do not appear to have

19   standing to challenge the portions of the transaction relating to animal health products.  To

20   establish standing to pursue claims under the antitrust laws, Plaintiffs must allege and prove that

21   they have or will suffer "antitrust injury" – *i.e.*, "injury of the type the antitrust laws were

22   intended to prevent and that flows from that which makes the defendant's acts unlawful." *Atl.*

23   *Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).  "The requirement that the alleged

24   injury be related to anticompetitive behavior requires, as a corollary, that the injured party be a

25   participant in the same market as the alleged malefactors."  *Bhan v. NME Hospitals, Inc.*, 772

26   F.2d 1467, 1470 (9th Cir. 1985).  "A plaintiff who is neither a competitor nor a consumer in the

27   relevant market does not suffer antitrust injury." *Vinci v. Waste Management Inc.*, 80 F.3d 1372,

28   1377 (9th Cir. 1996) (internal citations omitted).   None of the Plaintiffs are alleged to be

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63876299.1                                        11

MOTION TO DISMISS PLAINTIFFS' FA COMPLAINT; MEMO POINTS AND AUTHORITIES IN SUPPORT
Case No. CV-09-3854-MMC

1   purchasers of cattle vaccines or horse dewormers, or the other animal health products that are

2   described in Paragraph 31 of the Complaint.  Thus, they would lack standing to challenge any

3   potential antitrust violations in relation to markets for animal health products even if their claims

4   relating to animal health products were not moot.

5            **E.**     **Plaintiffs' Complaint Should Be Dismissed With Prejudice.**

6          Dismissal with prejudice and without leave to amend "is proper if it is clear that the

7   complaint could not be saved by amendment."  *Kendall*, 518 F. 3d at 1051, *citing Eminence*

8   *Capital, LLC v. Aspeon, Inc.¸* 316 F. 3d 1048, 1052 (9th Cir 2003).  Plaintiffs have already been

9   given leave to amend once, and their FA Complaint suffers from exactly the same problems as

10   their Initial Complaint.  Further amendment would be futile.

11          Plaintiffs are all alleged to be pharmacists and pharmacies.  Complaint ¶8.  As such, they

12   must know what prescription drug products are currently available, what those products are used

13   to treat, and the prices of those products.  They are certainly aware, in short, of more than enough

14   facts to know that there is no economically relevant market for all prescription drugs.  And they

15   must know which other products are available to treat the conditions they say define the scope of

16   various relevant markets, who produces those products, and the extent to which they are

17   "reasonably interchangeable."  If Plaintiffs were able to allege plausible violations of Section 7 of

18   the Clayton Act or Section 1 of the Sherman Act, they presumably would have done so already.

19   Plaintiffs have shown that they cannot or will not even attempt to allege the facts that the

20   governing case law requires them to include in their Complaint to survive a motion to dismiss.

21   The complaint should be dismissed with prejudice.

22   **IV.**   **CONCLUSION**

23          For the foregoing reasons, Defendants respectfully submit that the Complaint should be

24   dismissed with prejudice.

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB1/63876299.1                12
MOTION TO DISMISS PLAINTIFFS' FA COMPLAINT; MEMO POINTS AND AUTHORITIES IN SUPPORT
Case No. CV-09-3854-MMC

1    Dated: October 28, 2009            MORGAN, LEWIS & BOCKIUS LLP

2

3                                By            /s/
                                     Franklin Brockway Gowdy (SBN 47918)

4                                      Kent M. Roger (SBN  95987)
                                     Lisa Tenorio-Kutzkey (SBN  205955)

5                                      R. Sturtevant Eaton (SBN 240761)
                                     One Market, Spear Street Tower

6                                      San Francisco, CA  94105
                                     Tel:  415.442.1000

7                                      Fax: 415.442.1001
                                     Email:  fgowdy@morganlewis.com

8                                      Email:  kroger@morganlewis.com
                                     Email:  ltenorio-kutzkey@morganlewis.com

9                                      Email:  reaton@morganlewis.com

10                                      Scott A. Stempel
                                     J. Clayton Everett, Jr.

11                                      Daniel A. Schiffer
                                     1111 Pennsylvania Ave., NW

12                                      Washington, DC  20004
                                     Tel:  202.739.3000

13                                      Fax: 202.739.3001
                                     Email:  sstempel@morganlewis.com

14                                      Email:  jeverett@morganlewis.com
                                     Email:  dschiffer@morganlewis.com

15                                      Counsel for Defendants Pfizer Inc. and Wyeth

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MOTION TO DISMISS PLAINTIFFS' FA COMPLAINT; MEMO POINTS AND AUTHORITIES IN SUPPORT
Case No. CV-09-3854-MMC