IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDEN GATE PHARMACY SERVICES, INC., d/b/a GOLDEN GATE PHARMACY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PFIZER, INC., and WYETH, <br><br> Defendants / | No. C-09-3854 MMC <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |

   Before the Court is defendants Pfizer Inc. and Wyeth's motion, filed October 28, 2009 and amended November 6, 2009, to dismiss plaintiffs' First Amended Complaint. Plaintiffs Golden Gate Pharmacy Services, Inc., James Clayworth, R.Ph., Marin Apothecaries, Pediatric Care Pharmacy, Inc., Tony Mavrantonis, R.Ph., John O'Connell, R.Ph., and Tilley Apothecaries, Inc. have filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter suitable for decision on the parties' respective submissions, VACATES the hearing scheduled for December 4, 2009, and rules as follows.

//

//

**BACKGROUND**

In their First Amended Complaint ("FAC"), plaintiffs, who are "retail pharmacies in California," allege that each defendant is a "pharmaceutical manufacturer," and that defendants "consummated [a] merger" on October 15, 2009. (See FAC at 1:22, ¶ 1.) Plaintiffs allege "[t]he effect of the announced merger of defendants may be to lessen competition or to tend to create a monopoly, and has already lessened competition and tended to create a monopoly, in numerous markets and submarkets . . . involving the manufacture and sale of pharmaceuticals and involving research, development, and innovation with respect to pharmaceuticals." (See FAC ¶ 2.) Based on such allegations, plaintiffs allege defendants have violated Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 1 of the Sherman Act, 15 U.S.C. § 1.

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations

must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 129 S. Ct. at 1950 (internal quotation and citation omitted).

**DISCUSSION**

As noted, plaintiffs allege defendants' merger violates Section 7 of the Clayton Act and Section 1 of the Sherman Act. Section 7 of the Clayton Act prohibits mergers or acquisitions "in any line of commerce or in any activity affecting commerce in any section of the country, [where] the effect of such acquisition may be substantially to lessen competition or to tend to create a monopoly." See 15 U.S.C. § 18. Section 1 of the Sherman Act provides that any "contract, combination . . ., or conspiracy, in restraint of trade or commerce" is "illegal." See 15 U.S.C. § 1.

In the FAC, plaintiffs allege the merger has or will produce "anticompetitive effects" in thirty-three markets. (See FAC ¶¶ 17, 34.) With respect to the majority thereof, defendants argue, plaintiffs have failed to sufficiently allege a market and to sufficiently allege facts to support a finding that the merger has violated or will violate either Section 7 of the Clayton Act or Section 1 of the Sherman Act. With respect to claims based on the remainder of the alleged markets, defendants argue plaintiffs have failed to sufficiently allege standing and, alternatively, that the claims are moot.

**A. All Prescription Pharmaceutical Products**

Plaintiffs allege that one of the product markets negatively affected by the merger is the product market for "[t]he manufacture and sale of all prescription pharmaceutical products." (See FAC ¶ 17(a).)

"Antitrust law requires [an] allegation of both a product market and a geographic market." Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1045 (9th Cir. 2008).[1] A product market consists of "commodities reasonably interchangeable by consumers for

---

[1] Plaintiffs allege "the relevant geographic market" for each of the thirty-three product markets is the "United States." (See FAC ¶ 16.) Defendants have not argued that plaintiffs' allegation of a nationwide market is deficient.

3

the same purposes." See United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 395 (1956). Consequently, a product market "must encompass the product at issue as well as all economic substitutes for the product." See Newcal, 513 F.3d at 1045.

An allegation that a product market exists must be, as with any element of a claim, supported by "sufficient factual matter," see Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), i.e., "evidentiary facts." See Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008). A complaint is subject to dismissal for failure to allege sufficient facts to support a cognizable product market. See, e.g., Tanaka v. University of Southern California, 252 F.3d 1059, 1063-64 (9th Cir. 2001) (affirming dismissal of antitrust claims where plaintiff athlete identified product market as "UCLA women's soccer program" but failed to allege any facts to support "conclusory" assertion that such market existed).

By order filed October 14, 2009, the Court dismissed with leave to amend plaintiffs' initial complaint, for the reason that plaintiffs had failed to allege any facts to support a finding that "[t]he manufacture and sale of all prescription pharmaceutical products," which was the only product market explicitly identified in the initial complaint, constituted a cognizable product market. Defendants argue the FAC is similarly deficient. The Court agrees.

As in the initial complaint, plaintiffs fail to allege in the FAC that all prescription drugs are "reasonably interchangeable by consumers for the same purposes." See E.I. du Pont de Nemours, 351 U.S. at 395. Although market boundaries "may be determined by examining such practical indicia as industry or public recognition," see Brown Shoe Co. v. United States, 370 U.S. 294, 325 (1962), plaintiffs' reliance on their conclusory allegations that "[t]he overall pharmaceutical market is recognized by Fortune Magazine" and that "[t]he prescription drug market [is] recognized [ ] by Dun & Bradstreet" (see FAC ¶ 18) is unavailing. Plaintiffs fail to provide the context for any such asserted recognition; plaintiffs do not allege, for example, that Fortune Magazine recognized the overall pharmaceutical market as consisting of reasonably interchangeable products. See Brown Shoe Co., 370 U.S. at 299, 325-26 (examining effect of merger on separate "product lines" of men's,

4

women's and children's shoes as opposed to "shoes as a whole"). Nor can the Court simply assume that all prescription drugs are reasonably interchangeable for the same purposes, such that, for example, if the price of a prescription drug used to treat osteoporosis rises, consumers may react by switching to a prescription drug used to treat Alzheimer's disease. See Apple Inc. v. Psystar Corp., 586 F. Supp. 2d 1190, 1196 (N.D. Cal. 2008) ("Whether products are part of the same or different markets under antitrust law depends on whether consumers view those products as reasonable substitutes for one another and would switch among them in response to changes in relative prices[.]").

Accordingly, to the extent plaintiffs' claims are based on the merger's effects on the alleged market for the manufacture and sale of all prescription pharmaceutical products, the claims are subject to dismissal for failure to allege a cognizable product market.

**B. All Brand Name Prescription Pharmaceutical Products**

The FAC also identifies as a product market "[t]he manufacture and sale of all brand name prescription pharmaceutical products." (See FAC ¶ 17(b).)

For the reasons discussed above with respect to the alleged product market for "all prescription pharmaceutical products," the Court finds plaintiffs have failed to allege sufficient facts to support a finding that a cognizable product market exists for "all brand name prescription pharmaceutical products." Although the instant alleged market is narrower than the previously-discussed market, in that generic prescription products would be excluded, plaintiffs fail to allege any facts to support a finding that all brand name prescription products, any more than generic prescription pharmaceutical products, are reasonably interchangeable for the same purposes. See, e.g., Big Bear Lodging Ass'n v. Snow Summit, Inc., 182 F.3d 1096, 1105 (9th Cir. 1999) (holding, where plaintiffs alleged "product markets for lodging accommodations and ski packages" in Big Bear Valley, district court properly dismissed antitrust claims because plaintiffs failed to allege "there are no other goods or services that are reasonably interchangeable with lodging accommodations or ski packages within [the] geographic market" of Big Bear Valley).

//

Accordingly, to the extent plaintiffs' claims are based on the merger's effects on the alleged market for the manufacture and sale of all brand name prescription pharmaceutical products, the claims are subject to dismissal for failure to allege a cognizable product market.

**C. Research and Development Of New Pharmaceutical Products**

The FAC identifies, as additional markets effected by the merger, "[t]he innovation market for the research and development of new prescription pharmaceutical products" (see FAC ¶ 17(c)) and "[t]he innovation market for the research and development of new brand name prescription pharmaceutical products" (see FAC ¶ 17(d)).[2]

Plaintiffs fail to identify the consumers who purchase goods or services in the alleged innovation markets. Assuming, arguendo, the consumers are persons or entities who would purchase new products ultimately developed by the companies who compete to develop new products, plaintiffs have failed to allege a cognizable product market. Specifically, for the reasons stated above with respect to the alleged product market for all prescription pharmaceutical products, plaintiffs have failed to allege that prescription pharmaceutical products being developed, whether ultimately branded or not, will be reasonably interchangeable.

Accordingly, to the extent plaintiffs' claims are based on the merger's effects on the alleged markets for the research and development of new pharmaceutical products, whether branded or not, the claims are subject to dismissal for failure to allege a cognizable product market.

**D. Product Markets Defined By Specific Human Diseases/Conditions**

Plaintiffs allege several markets defined by reference to a specific human disease or condition. In that regard, plaintiffs allege separate product markets exist for the manufacture and sale of drugs to treat Alzheimer's disease, renal cell carcinoma, and

---

[2] Plaintiffs do not explain how these two alleged "innovation markets" differ. Plaintiffs do not allege, for example, that defendants are developing, or have ever developed, non-brand name prescription drugs.

1  Methicillin-resistant Staphylococcus aureus infections. (See FAC ¶¶ 17(f), 17(h)-(i).)
2  Further, plaintiffs allege separate markets exist for the research and development of new
3  drugs to treat osteoporosis and to treat Alzheimer's disease. (See FAC ¶¶ 17(e), 17(g).)
4  Finally, plaintiffs allege separate markets exist for brand name antidepressants, anti-
5  bacterials, and anti-neoplastics. (See FAC ¶¶ 17(j)-(l).)

6        Plaintiffs again fail to allege that the products sold or to be sold within the above-
7  referenced markets are or will be reasonably interchangeable. Further, to the extent
8  plaintiffs limit some of the markets to only "brand name" pharmaceutical products, plaintiffs
9  fail to allege that generic drugs are not reasonably interchangeable with brand name drugs.
10 Even assuming, arguendo, given the more limited nature of the alleged markets, all drugs
11 prescribed to treat a specific disease or condition are reasonably interchangeable, and
12 further assuming that generic drugs are not reasonably interchangeable with brand name
13 products in the markets plaintiffs seek to so limit, plaintiffs have failed, however, to allege
14 sufficient facts to support a finding that the merger will result in, or has resulted in, a
15 violation of Section 7 of the Clayton Act or Section 1 of the Sherman Act.

16       Antitrust claims must be supported by "evidentiary facts," as opposed to "bare
17 assertions," "ultimate facts" and "conclusions." See Iqbal, 129 S. Ct. at 1951 (holding "bare
18 assertions" that "amount to nothing more than a formulaic recitation of the elements of a [ ]
19 claim" not entitled to "presumption of truth"); Kendall, 518 F.3d at 1047-48 (holding plaintiff
20 who alleged "only ultimate facts" and "legal conclusions," rather than "evidentiary facts,"
21 failed to state Sherman Act claim). Here, plaintiffs allege antitrust violations in a conclusory
22 manner. For example, with respect to the alleged product market for brand name
23 prescription anti-bacterials, plaintiffs allege the following:

> In the market for brand name prescription anti-bacterials[,] Wythe's Tygacil competes with Pfizer's Zyvox. After the merger, Pfizer and Wyeth will no longer compete in this market, competition will be limited, and the likely result will be higher prices for all drugs sold in this market. The merger company will have a dominant position in this market, with the ability to raise prices, create a price umbrella, and deter competition from smaller rivals. Because of defendants' size, and their combined power once they have merged, other actual and potential competitors will be deterred from competing with defendants in the brand name prescription anti-bacterials market, with

consequent harm to competition and to consumers.

(See FAC ¶ 25.)[3]

The above-referenced conclusory statements, if supported by evidentiary facts, may suffice to state a claim; the FAC, however, does not include those requisite evidentiary facts. Although the FAC does allege that Pfizer and Wyeth, prior to the merger, "rank[ed] in the top five" of suppliers in each of the markets identified in the FAC, including the product market for brand name prescription anti-bacterials (see FAC ¶ 18), the FAC fails to allege, for example, the number of suppliers that compete in any of the subject markets. Whether it is plausible to infer that the merged company will be, as a result of the merger, in a "dominant position" in any given product market depends, at least in part, on whether, prior to the merger, there were a small number of competitors and/or a substantial difference in volume or percentage of sales, in which instance a ranking in the top five would be of more significance, as opposed to a large number of competitors and/or a relatively small difference in volume or percentage of sales, in which instance a ranking in the top five could have little to no significance. See, e.g., Brown Shoe Co., 370 U.S. at 300-01 (setting forth statistics for "the industry"). Consequently, plaintiffs' allegation that Pfizer and Wyeth "ranked in the top five" is, standing alone, insufficient to state a claim that the merger's effect "may be substantially to lessen competition or to tend to create a monopoly," see 15 U.S.C. § 18, or that it will result in, or has resulted in, a "restraint of trade or commerce," see 15 U.S.C. § 1. Stated otherwise, the FAC's limited factual allegations are insufficient to "nudge" the claims "across the line from conceivable to plausible." See Iqbal, 129 S. Ct. 1951 (internal quotation and citation omitted) (holding district court, after disregarding "bare assertions" and conclusions, must "consider the factual allegations in [a] complaint to determine if they plausibly suggest an entitlement to

---

[3]The allegation plaintiffs make with respect to the other product markets is substantially similar to that set forth with respect to the market for brand name prescription anti-bacterials, with the exception that, as to some of the markets, plaintiffs fail to identify the names of the products sold. (See, e.g., FAC ¶ 27 (alleging that "[i]n the market for brand name prescription drugs for the treatment of renal-cell carcinoma, Pfizer and Wyeth have products that are competitive.").)

8

relief" as opposed to a claim that is merely "conceivable"); see, e.g., Tanaka, 252 F.3d at 1063-64 (affirming dismissal of Sherman Act claim where plaintiff failed to allege facts to support finding conduct at issue "has had significant anticompetitive effects within a relevant market, however defined").

Accordingly, to the extent plaintiffs' claims are based on the merger's effects on the alleged markets for the manufacture and sale of pharmaceutical products defined by reference to a specific human disease or condition, the claims are subject to dismissal for failure to state a claim.

**E. Animal Health Markets**

Plaintiffs, incorporating by reference a complaint filed by the Federal Trade Commission ("FTC") dated October 14, 2009 ("FTC Complaint"), allege there exist product markets for "[t]he manufacture and sale of numerous animal health products," specifically, the twenty-one product markets alleged in the FTC Complaint, such as "canine monovalent vaccines for the prevention and treatment of disease caused by parvovirus" and "equine tapeworm parasiticides containing praziquantel." (See FAC ¶¶ 21(m), 31, Ex. A ¶ 7.) Defendants do not assert plaintiffs have failed to identify cognizable animal health markets or that plaintiffs have failed to sufficiently allege antitrust claims with respect to such markets.[4] Rather, defendants argue plaintiffs have failed to allege standing and that the

---

[4] In contrast to the allegations set forth in the FAC with respect to the various products designed for use by humans, the allegations in the FTC Complaint state in a concise manner evidentiary facts to support a finding that the effect of the merger may be to substantially lessen competition in the animal health markets specified therein. For example, with respect to the alleged product market for cattle macrocyclic lactone parasiticides, the FTC Complaint alleges as follows:

> Pfizer, [Wyeth], and Merial are the only three branded players in the U.S. market for cattle macrocyclic lactone parasiticides. The proposed acquisition would significantly increase the concentration in this market, leaving Pfizer with approximately 42 percent of this $118 million market. Suppliers of generic macrocyclic lactone products do not provide a serious competitive constraint due to their poor reputation in this market. Further, such suppliers sell generic versions of only Merial's product; there are no generic versions of Pfizer's or [Wyeth's] products currently available.

(See FAC, Ex. A ¶ 15.)

1 claims are moot.

2 "[A]ntitrust standing" is limited to "customers and competitors" and, under limited 3 circumstances, "a dismissed employee." See Vinci v. Waste Management, Inc., 80 F.3d 4 1372, 1376 (9th Cir. 1996). A complaint that fails to allege grounds to support a finding that 5 the plaintiff has standing to allege an antitrust claim is subject to dismissal. See id. at 1374, 6 1377. Here, defendants argue, plaintiffs have failed to allege that any of the named 7 pharmacy plaintiffs is a customer who purchases products in any of the twenty-one animal 8 health markets identified in the FTC Complaint, is a competitor of Pfizer or Wyeth, or is a 9 dismissed employee. In their opposition, plaintiffs do not contend the FAC includes 10 sufficient facts to support a finding that any plaintiff has standing to allege antitrust claims 11 based on any of the twenty-one animal health markets. Consequently, the FAC, to the 12 extent it is based on the twenty-one animal health markets, is subject to dismissal. See id.[5]

13 As noted, defendants also contend the claims based on the animal health markets 14 are moot. Defendants, however, have failed to make a showing sufficient to support a 15 finding to that effect. Although defendants argue they have divested themselves of their 16 assets in the animal health markets identified in the FTC Complaint, defendants have failed 17 to offer evidence establishing such divestiture. See McCarthy v. United States, 850 F.2d 18 558, 560 (9th Cir.1988) (holding district court, when considering motion to dismiss for lack 19 of subject matter jurisdiction, "may review any evidence, such as affidavits and

20 //
21 //

---

[5] With their opposition, plaintiffs offer a declaration by the owner of plaintiff Golden Gate Pharmacy Services, Inc. ("Golden Gate Pharmacy"), who states that Golden Gate Pharmacy "dispenses animal health care products, including Pfizer's Rimadyl and Zenequin and Wyeth's [Fort Dodge's] Viokase V." (See Lofholm Decl., filed November 13, 2009, ¶ 1, 3.) In reply, defendants argue the declaration is insufficient, because the declarant does not state that Golden Gate Pharmacy purchases animal health products within any of the twenty-one markets identified in the FTC Complaint, thus apparently taking the position that Rimadyl, Zenequin, and Viokase V are not products within any of the subject animal health markets. As discussed below, the Court will afford plaintiffs further leave to amend. On the limited record before the Court at this time, the Court cannot determine whether purchases of Rimadyl, Zenequin, or Viokase V, if alleged in a Second Amended Complaint, would suffice to establish standing.

testimony, to resolve factual disputes concerning the existence of jurisdiction").[6]

Accordingly, to the extent plaintiffs' claims are based on the merger's effects on the alleged animal health markets identified in the FTC complaint, the claims are subject to dismissal for the reason plaintiffs have failed to allege they have standing.

**F. Leave To Amend**

Defendants argue the Court should not afford plaintiffs leave to amend, for the asserted reason that plaintiffs, if they were able to allege a cognizable claim or claims, would have been able to do so in the FAC.

Because the FAC identifies a number of alleged markets not identified in the initial complaint, the majority of the deficiencies discussed above were not addressed in the Court's order dismissing the initial complaint. Further, the majority of those deficiencies constitute pleading deficiencies that are not necessarily incurable. Under the circumstances, the Court finds it appropriate to afford plaintiffs a further opportunity to amend.

**CONCLUSION**

For the reasons discussed above, defendants' motion to dismiss the FAC is hereby GRANTED, and the FAC is hereby DISMISSED.

If plaintiffs elect to file a Second Amended Complaint to cure the deficiencies identified above, plaintiffs shall file their Second Amended Complaint no later than January 8, 2010.

//
//
//
//

---

[6] Defendants have offered copies of the FTC's order requiring defendants to divest themselves of various assets, as well as statements issued by the FTC concerning that order. (See Everett Decl. Exs. A, B, C.) None of those documents, however, constitutes evidence that defendants, subsequent to the FTC's order, in fact divested themselves of the subject assets.

11

The Case Management Conference is hereby CONTINUED from December 4, 2009 to February 26, 2010.

**IT IS SO ORDERED.**

Dated:  December 2, 2009

_____
MAXINE M. CHESNEY
United States District Judge